## UNITED STATES v. ARCHIBALD et al.

(District Court, S. D. New York. March 10, 1925.)

1. **Intoxicating liquors** ⊗➝275—**Evidence held to establish maintenance of liquor nuisance, warranting abatement.**

Evidence of large quantity of liquor in hotel and prior conviction of lessee *held* sufficient to establish maintenance of liquor nuisance, warranting abatement.

2. **Cancellation of instruments** ⊗➝38 — **Landlord, in proceeding to abate liquor nuisance, held entitled to file cross-bill for cancellation of tenant's lease.**

Owner of hotel *held* entitled to maintain cross-bill for cancellation of tenant's lease, in abatement proceeding for liquor law violations.

3. **Equity** ⊗➝42(2)—**In proceeding to abate liquor nuisance, lessee, who failed to answer owner's cross-bill for cancellation of lease, held not entitled to object that owner had adequate remedy at law.**

In proceeding to abate liquor nuisance against lessee of hotel, where latter failed to answer cross-bill by landlord for cancellation of lease, he may not subsequently obtain dismissal of cross-bill on ground of existence of adequate remedy at law.

In Equity. Proceeding to abate liquor nuisance by the United States against Frank Archibald, Samuel Wolff, the Lafayette Hotel and Saloon, and John Doe, wherein the owner filed a cross-bill, seeking cancellation of lease. Decree for the United States and for owner on his cross-bill.

Emory R. Buckner, Francis A. McGurk, and Frederick C. Bellinger, all of New York City, for the United States.

William E. Riseley, of New York City, for defendant Archibald.

Harry M. Peyser, of New York City for defendants Wolff and Deitsch.

AUGUSTUS N. HAND, District Judge. [1] The evidence has demonstrated conclusively that the premises were used in violation of the provisions of the Volstead

Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) and became a nuisance under the provisions of that act. Not only has the tenant Archibald been convicted in this court of possessing liquor and maintaining a nuisance at the premises in question, but the testimony introduced to-day amply demonstrates that he had liquor there for sale in connection with his hotel. An unusually large amount was found in the so-called storeroom. It is notorious that a small hotel ordinarily does not keep as much stock on hand, if it is engaged in an illegal liquor business, as this one did. It is ordinarily brought in from outside, and in the daytime, if a day search warrant be executed, little or nothing can be found there. Here was a substantial amount of alcohol, as well as ale, beer, and whisky.

It is idle for a man in the hotel business to claim that he has a room like the one described in the testimony here, unconnected with his home, except for the purpose of supplying liquor to people who wish to have it for beverage purposes. If there was anybody named Brown, who, with his wife, occupied the room where the liquor was found, no such persons have been produced. We have the testimony of the agents that the room did not appear to be occupied; that it had a bed in it, with no mattress on it, and some trunks that were roped. This is really contradicted by no one, and the only evidence offered in opposition to it is that of Archibald, who did not pretend to have seen the room made up, but merely regarded it as made up, because he had boarders to whom it was let. Where are the boarders, and why should the court believe the testimony of one highly interested defendant, who has already been convicted by a jury of maintaining a nuisance upon the premises, against the testimony of the revenue agents and the mute, but very persuasive, testimony of the alcohol, whisky, and port wine that were found in that room?

[2] Now, it being clear that these premises were a nuisance, and that the nuisance should be abated, the main question is what relief, if any, should be granted to the landlord. Nothing has been shown implicating him. He has been brought into the suit, and compelled to take a defensive position, and to do what he could to set himself right. One of the things he has attempted to do has been to have the lease canceled. There was no answer to his cross-bill; there was no claim of lack of jurisdiction of the court until after the time to answer had expired and the case came on for trial. In such a situation I cannot see how even the point left for future consideration by the opinion of Judge Hough in the case of United States v. Duignan is open here.

[3] The court surely has jurisdiction of the person and of the subject-matter, or the decree which was affirmed in the Duignan Case could not have been affirmed. The only question is whether the tenant can defend and get the cross-bill dismissed on the ground that there is an adequate remedy at law, and that therefore a court of equity is not entitled to grant relief. This position the tenant never took seasonably. The opinion of the Circuit Court of Appeals of the Seventh Circuit in the Grossman Case, 280 F. 683, at page 686, is pertinent. There it is said:

"We have, then, under consideration a cross-bill, where the subject-matter is germane to that of the original bill. The relief sought was expressly provided for by the statute. Irrespective of the provisions of the National Prohibition Act, a landlord leasing premises for lawful purposes would be entitled to a termination of the lease, in case the tenant violated the law and maintained a nuisance upon the premises. The defendant Grossman was not deceived by the pleadings, for he answered the cross-bill as well as the original complaint filed, and continued the misconduct with which he was charged."

The Grossman Case, like the Duignan Case, was one where an answer was interposed, but I refer to the part of the quotation where it is said that the "subject-matter is germane to that of the original bill."

The landlord is brought into a suit affecting his premises, and for the purpose of closing them up. If he can get no relief of a speedy nature in the action itself, he will be put in a position where the decree closing the premises impairs the earning capacity of his tenant, and leaves him with a lease which he cannot get rid of in the court in which the suit is brought. It seems to me that the rights invoked by the government, the rights of the tenant, and the rights of the landlord, and the relief sought for or against these parties, are matters germane to the suit brought, and such rights were properly so described by the Circuit Court of Appeals of the Seventh Circuit. U. S. v. Grossman, 280 F. at page 686. All the relief prayed for affects the res in a proceeding in rem. A complete determination of the rights of all parties will avoid multiplicity of action. The remedies are consequently in their nature equitable, and

may properly be enforced by me sitting as a chancellor.

The landlord has consented to a decree closing the premises for three months, and the government is satisfied with that disposition, so far as he is concerned. In view of the way the business has been conducted by the tenant I think that the landlord is entitled to be free from him, and I accordingly grant a decree declaring the premises a nuisance, closing them for three months, and canceling the lease.